IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VEATH FISH FARM, LLC,           )<br>                                                 )<br>        Plaintiff                            )<br>                                                 )   Case No.  3:17-CV-00303-MJR-SCW<br>v.                                            )<br>                                                 )<br>PURINA ANIMAL NUTRITION, LLC  )<br>and TEXAS FARM PRODUCTS        )<br>COMPANY,                                )<br>                                                 )<br>        Defendants.                      )  | |

### PLAINTIFF'S TRIAL BRIEF

COMES NOW Plaintiff, Veath Fish Farm, LLC, by and through its attorneys, Mathis, Marifian & Richter, Ltd., and submits the following Trial Brief

### I.    THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT

Under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/ et seq., it is unlawful to engage in "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

The ICFA provides a remedy to consumers for unfair or deceptive acts or practices in commercial transactions. Greenberger v. GEICO General Ins. Co., 631. F.3d 392, 399 (7th Cir. 2011). Under the ICFA, a plaintiff need only show: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the

plaintiff (5) proximately caused by the deception.  Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill.2d 100, 190 (2005).   A deceptive act or practice under the ICFA includes "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact."  815 ILCS 505/2.  "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 505 (1996).

The ICFA affords consumers broader protection than a common law fraud action because it eliminates the element of scienter or the necessity of proof of actual reliance.  Tylka v. Gerber Prod. Co., No. 96 C 1647, 1999 WL 495126, at *4 (N.D. Ill. Jul. 1, 1999).  The ICFA prohibits any deception or false promise, and eliminating the requirement of scienter, thus making even innocent misrepresentations actionable under the Act.  Duran v. Leslie Oldsmobile, Inc., 229 Ill.App.3d 1032, 1039 (2d Dist. 1992).  Liability is not limited to existing material facts, rather a misrepresentation is also actionable under the ICFA if it relates to a future fact.  Id.; Smith v. Prime Cable of Chicago, 276 Ill. App. 3d 843, 856–57 (1st Dist. 1995); Duhl v. Nash Realty, Inc., 102 Ill.App.3d 483, 495 (1st Dist. 1981).

The key consideration in an IFCA claim is not the seller's intention, but the seller's conduct. Falcon Associates, Inc. v. Cox, 298 Ill.App.3d 652 (5th Dist. 1998).   When a seller makes representations not merely as an opinion, but as a statement of fact for the consumer to rely upon, the representation is treated as a statement of fact and the speaker is bound by it. Duhl, 102 Ill.App.3d at 489.  The seller's knowledge or ignorance about the falsity of its representations is irrelevant.  IWOI, LLC v. Monaco Coach Corp., 581 F.Supp.2d 994 (N.D. Ill. 2008).  See also People v. Smith, 979 N.E.2d 937 (1st Dist. 2012) (finding that the commission of an unfair or

deceptive act is sufficient, even if there is no intent to deceive or scienter); Miller v. William Chevrolet/GEO, Inc., 326 Ill.App.3d 642, 655 (1st Dist. 2001) ("Nor need the defendant have intended to deceive the plaintiff; innocent misrepresentations or material omissions intended to induce the plaintiff's reliance are actionable."); Am. Buyers Club of Mt. Vernon, Ill., Inc. v. Honecker, 46 Ill.App.3d 252, 259 (5th Dist. 1977) ("The intention of the seller – his good or bad faith – is not important.  Rather, we focus our attention upon the effect that the conduct might have on the consumer who was unjustifiably misled into purchasing that which he did not intend to purchase."); Tylka v. Gerber Products Co., No. 96-C-1647, 1999 WL 495126, at *4 (N.D. Ill. July 1, 1999) ("Indeed, an innocent misrepresentation may be actionable"); Smith v. Prime Cable of Chicago, 276 Ill. App. 3d 843, 856–57 (1st Dist. 1995) ("…the intention of the seller or the mental state of the person making the misrepresentation is not material to the existence of a cause of action under the Act since an action for innocent misrepresentation also is permissible under the Act.").

Both direct and indirect deception can satisfy the requirement of proximate cause under the ICFA. Shannon v. Boise Cascade Corp., 208 Ill.2d 517, 525-26 (2004).   Manufacturers can be liable under the ICFA "when they knowingly place a materially defective product into the stream of commerce whether or not they are in privity of contract with or communicate directly to the end consumer." IWOI, LLC v. Monaco Coach Corp., 581 F.Supp.2d 994, 1004 (N.D. Ill. 2008).

## II. PUNITIVE DAMAGES

Punitive damages are available to Plaintiff under the Illinois Consumer Fraud Act. See 815 ILCS 505/10a(a) ("The court, in its discretion, may award actual economic damages or any other relief which the court deems proper…").

Punitive damages are recoverable in a tort action if the alleged misconduct is outrageous

because acts are performed with malice, evil motive, or reckless indifference toward the rights of others. See Kleczek v. Jorgensen, 328 Ill.App.3d 1012 (4th Dist. 2002); Smith v. Prime Cable of Chicago, 276 Ill.App.3d 843 (1st Dist. 1995). See also Gent v. Collinsville Volkswagen, Inc., 116 Ill.App.3d 496, 504-05 (5th Dist. 1983) ("It has long been established in Illinois that punitive or exemplary damages may be awarded when torts are committed with fraud . . . or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others).

In Dubey v. Pub. Storage, Inc., 395 Ill. App. 3d 342 (1st Dist. 2009), the court found that there was ample evidence to support the conclusion that the defendant acted willfully or with such gross negligence to indicate a wanton disregard for the rights of others. The trial court relied on the following evidence in making its determination: (1) that the defendant was indifferent to the plaintiff's loss of property: (2) that the defendant was unwilling to take steps to determine what occurred during the course of the situation; (3) that the corporate policy exhibited a lack of care for what occurred in the plaintiff's situation; and (4) that there may have been trickery or deceit as the case progressed. Id. at 356–57.

In Magical Farms, Inc. v. Land O'Lakes, Inc., 356 Fed.Appx. 795 (6th Cir. 2009), the defendant Land O'Lakes argued that "punitive damages may not be recovered against a corporation in the absence of evidence that the corporation authorized, participated in, consented to, acquiesced in, or ratified the malicious conduct of its agents." Id. at 801. But the court in that case rejected that argument and found that there was sufficient evidence of corporate authorization and ratification to survive summary judgment. In Magical Farms, the plaintiff, an alpaca farm, purchased alpaca feed manufactured by the defendant, Land O' Lakes ("Lakes"). During manufacture, the feed became contaminated with an ingredient that was extremely toxic

to alpaca. The jury returned a substantial verdict in favor of the plaintiff, but prior to trial the district court had granted summary judgment to Lakes on the issue of punitive damages. Analyzing an Ohio law that similarly allowed for punitive damages based on misconduct toward a person's rights, the Magical Farms court found that a genuine issue of material fact existed as to whether Land O'Lakes' actions demonstrated a conscious disregard for the plaintiff's property rights in their alpacas. Id. at 801-02. In viewing the evidence presented, the court found that "it could be inferred that the Lakes' employees were aware of and disregarded a risk of ionophore contamination of alpaca feed at the Massillon plant, thereby consciously disregarding the Farms' property rights in their alpacas" and that "the Lakes' employees knew that disregarding the risk of contamination had a great probability of causing substantial harm to alpacas, including death. In other words, it could be inferred that the Lakes' employees acted with malice." Id. at 801.

Punitive damages are also recoverable against a defendant who fails to adequately test its product's impact on the end-user. See, e.g. Duddleston v. Syntex Laboratories, Inc., No. 80-L-57726 (Ill. Cir. Ct. Feb. 28, 1985) (punitive damages awarded in infant formula case wherein defendant omitted salt from the formula without adequately testing the impact on brain development).

### III.  IMPLIED WARRANTY OF MERCHANTABILITY

#### A. Warranty Disclaimers

The provisions of the Commercial Code, including the right for a seller to disclaim warranties, only applies to the sale of goods. See 810 ILCS 5/2-102 ("this Article applies to transactions in goods…it does not apply to any transaction… intended to operate only as a security transaction…"); see also 810 ILCS 5/2-314 ("a warranty that the goods shall be merchantable is implied in a contract for their sale").

Disclaimers of implied warranties are not favored by Illinois courts and are strictly construed against sellers. FMC Fin. Corp. v. Murphree, 632 F.2d 413, 419 (5th Cir. 1980) (applying Illinois law). In order to be a valid disclaimer to exclude an implied warranty of merchantability under Section 2-316, the language of the disclaimer must be "conspicuous." Section 1-201(10) defines a conspicuous writing as one that "a reasonable person against whom it is to operate ought to have noticed it." The determination of whether a particular term or clause is conspicuous is to be made by the court by asking if "attention can reasonably be expected to be called to the term or clause." Bell Fuels, Inc. v. Lockheed Elecs. Co., 130 Ill. App. 3d 940, 946 (1st Dist. 1985).

Even if a disclaimer is found to be conspicuous, it can still be found to be unconscionable under Section 2-302 if the disclaimer is oppressive. See FMC Finance Corp., 632 F.2d 413 at 420. The issue of unconscionability is not solely limited to the disclaimer's conspicuousness, but must be examined with reference to all of the circumstances surrounding the transaction and the negotiations related to it, including the manner in which the contract was entered into and whether each party had a reasonable opportunity to understand the terms of the contract. Federico v. Freedomroads RV, Inc., 2010 WL 4740181, at *7 (N.D. Ill. Nov. 10, 2010) (internal citations omitted). See Razor v. Hyundai Motor America, 222 Ill.2d 75, 101-02 (2006) ("procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it…the label must apply to a situation such as the case at bar where plaintiff has testified that she never saw the clause; nor is there any basis for concluding that plaintiff *could* have seen the clause, before entering into the sale contract." (Emphasis in original)). See also Durham v. Ciba-Geigy Corp., 315 N.W.2d 696, 700 (S.D. 1982) ("To permit the manufacturer of the pesticide to escape

all consequential responsibility for the breach of contract by inserting a disclaimer of warranty and limitation of consequential damages clause … would leave the pesticide user without any substantial recourse for his loss. One-sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconscionable.").

### B. Product Defect

In order to prove a breach of implied warranty of merchantability claim, Plaintiff is not required to prove the existence of a specific product defect; rather, a defect may be proven inferentially by direct or circumstantial evidence. Alvarez v. American Isuzu Motors, 321 Ill.App.3d 696, 703 (1st Dist. 2001) (citing Tweedy v. Wright Ford Sales, Inc., 64 Ill.2d 570 (1976)). As found by the Illinois Supreme Court in Tweedy:

> "A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed to 'perform in the manner reasonably to be expected in light of [its] nature and intended function.'"

Tweedy, 64 Ill.2d at 574 (internal citations omitted).

The defect need not be present immediately upon the purchase of the product, but evidence of reasonable and proper handling of the product between the time it left the possession of the manufacturer and the time of the injury is an indication that the defect existed prior to the injury and did not arise in the interim. Alvarez, 321 Ill.App.3d at 704.

### IV. NEGLIGENCE

The sudden, calamitous, or dangerous occurrence exception to the Moorman doctrine consists of a two-pronged test: (1) that the event at issue constituted a sudden, calamitous, or dangerous occurrence; and (2) that the damage sustained constituted "property damage." ExxonMobil Oil Corp. v. Amex Constr. Co., 702 F. Supp. 2d 942, 968 (N.D. Ill. 2010) (citing Mars, Inc. v. Heritage Builders of Effingham, Inc., 327 Ill. App. 3d 346 (4th Dist. 2002)).

When determining the suddenness of an event, the key consideration is the suddenness of the occurrence of the event, rather than the length of time within which the defect or cause of the occurrence develops. Id. at 969 (citing Am. Xyrofin, Inc. v. Allis-Chalmers Corp., 230 Ill. App. 3d 662, 671 (2d Dist. 1992)). In ExxonMobil, *supra*, the court found that, due to a defect which existed in a pipe, a leak developed which, after a period of time, caused a sudden decoupling of the pipe. Id. The court found that "the length of time over which the leak developed before the time when it decoupled is inconsequential; what matters is the suddenness of the decoupling itself." Id. See also Am. Xyrofin, 230 Ill. App. 3d at 671. ("When characterizing an event as sudden and calamitous the focus is upon 'the suddenness of the *occurrence of an event*—the point when the injury occurs—where such occurrence causes personal injury or damage to property external to the defective product which exposes a party to an unreasonable risk of injury to himself or his property, rather than the suddenness or length of time within which the *defect or cause of the occurrence* develops and manifests itself in the sudden and calamitous occurrence.") (internal citations omitted) (emphasis in original).

The "property damage" prong is satisfied by establishing damage to property other than that of the defective product. Progressive N. Ins. Co. of Ill. v. Ford Motor Co., 259 F. Supp. 3d 887, 892 (S.D. Ill. 2017) (citing Trans States Airlines v. Pratt & Whitney Canada, Inc., 177 Ill. 2d 21, 27 (1997)). See Starks Feed Co. v. Consolidated Badger Co-op, Inc., 592 F.Supp. 1255, 1257 (N.D. Ill. 1984) (finding that the calf-grower plaintiff was entitled to proceed in tort against the manufacturer of allegedly defective powder used in calf feed, because the plaintiff could claim tangible property damage in the death of its calves).

                    MATHIS, MARIFIAN & RICHTER, LTD.


            By:   /s/ Mark S. Schuver
                 William J. Niehoff #6193763
                 Mark S. Schuver #6197656
                 Melissa C. Meirink #6323373
                 23 Public Square, Suite 300
                 Belleville, Illinois 62220
                 (618) 234-9800
                 (618) 234-9786 Fax
                 wniehoff@mmrltd.com
                 mschuver@mmrltd.com
                 mmeirink@mmrltd.com

Attorneys for Plaintiff, Veath Fish Farm, LLC

## Certificate of Service

This is to certify that a true and accurate copy of the foregoing was served upon all attorneys of record by electronic delivery via the CM/ECF System, on this 3rd day of December, 2018 to:

Brian McBrearty
Litchfield Cavo LLP
222 South Central Ave., Suite 200
St. Louis, MO 63105-3527
mcbreartyb@litchfieldcavo.com

Jonathan C. Miesen
Purina Animal Nutrition, LLC
4001 Lexington Avenue North
Arden Hills, MN 55126
jcmiesen@landolakes.com

Scott C. Solberg
James W. Joseph
Eimer Stahl LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60604
ssolberg@eimerstahl.com
jjoseph@eimerstahl.com

                                                          /s/ Mark S. Schuver